Dyke E. Huish, State Bar No. 167690
LAW OFFICES OF DYKE E. HUISH
8105 Irvine Center Drive, Suite 1020
Irvine, CA 92618
Telephone: (949) 837-8600
Facsimile:  (949) 363-5552
Email:      huishlaw@mac.com

Steven C. Smith, State Bar No. 116246
Jason K. Smith, State Bar No. 277923
SMITH LC
1800 North Broadway, Suite 200
Santa Ana, California 92706
Telephone: (714) 550-7720
Facsimile:  (714) 550-1251
Email:      ssmith@smith-lc.com
Email:      jsmith@smith-lc.com

Attorneys for Defendant, Joseph Haymore

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT – SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH HAYMORE<br><br>Defendants. | CASE NO: 8:12-CR-00090-AG<br>JUDGE: Hon. Andrew J. Guilford<br><br>**SUPPLEMENTAL CASE RE: SENTENCING OF DEFENDANT JOSEPH HAYMORE** |

Recently, counsel for Defendant Haymore found a relevant case from the Northern District of California regarding the applicability of *Apprendi* and *Blakely* to calculating losses. The case is *US v. AU Optronics Corporation*, 2011 U.S. Dist. LEXIS 77494 (N.D. Cal. July 18, 2011).

///

Mr. Haymore's counsel intends to discuss the *AU Optronics* case at the sentencing hearing tomorrow. A copy of the case downloaded from LexisNexis is attached hereto for the Court's convenience.

Dated: September 9, 2014     SMITH LC

By: _____*/s/ Jason K. Smith*_____
    Steven C. Smith
    Jason K. Smith
   Attorney for Defendant, Joseph Haymore



**UNITED STATES OF AMERICA, Plaintiff, v. AU OPTRONICS CORPORATION, et al., Defendants.**

**No. C 09-00110 SI**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2011 U.S. Dist. LEXIS 77494*

**July 18, 2011, Decided
July 18, 2011, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *United States v. AU Optronics Corp., 2011 U.S. Dist. LEXIS 148035 (N.D. Cal., Dec. 22, 2011)*

**PRIOR HISTORY:** *United States v. AU Optronics Corp., 2011 U.S. Dist. LEXIS 75436 (N.D. Cal., July 13, 2011)*

**COUNSEL:** [*1] For Tsannrong Lee, also known as Tsan-Jung Lee, also known as Hubert Lee, Defendant: Brendan Patrick Conroy, Law Offices of Brendan Conroy, San Francisco, CA.

For Borlong Bai, also known as Richard Bai, Defendant: Randall Gary Knox, Attorney at Law, San Francisco, CA.

For Shiu Lung Leung, also known as Chao-Lung Liang, also known as Steven Leung, Defendant: Brendan Patrick Conroy, Law Offices of Brendan Conroy, San Francisco, CA; Dara Lucille Cashman, Cashman Law Offices, SF, CA; Dennis Ross Cashman, Law Office of Dennis Cashman, San Francisco, CA.

For Lai-Juh Chen, also known as L.J. Chen, Defendant: Brian H. Getz, Law Offices of Brian H Getz, San Francisco, Ca.

For Hui Hsiung, also known as Kuma, Defendant: Brian P. Berson, Law Offices of Brian Berson, San Francisco, CA.

For Hsuan Bin Chen, also known as H.B. Chen, Defendant: Jennifer Michele French, LEAD ATTORNEY, Cooley LLP, San Diego, CA; Michael A. Attanasio, LEAD ATTORNEY, Cooley, Godward, Kronish, LLP, San Diego, CA.

For Au Optronics Corporation, Defendant: Carl Lawrence Blumenstein, Christopher Alan Nedeau, Nossaman LLP, San Francisco, CA; Dennis Patrick Riordan, Donald Meredith Horgan, Riordan & Horgan, San Francisco, CA; Jessica [*2] Rae Madrigal, Nossaman Guthner Knox Elliott, San Francisco, CA; Kirk Christopher Jenkins, Sedgwick Detert Moran Arnold, Chicago, IL; Paul L. Knight, Nossman LLP, San Francisco, CA.

For AU Optronics Corporation America, Defendant: John D. Cline, LEAD ATTORNEY, Law Office of John D. Cline, San Francisco, CA; Carl Lawrence Blumenstein, Christopher Alan Nedeau, Nossaman LLP, San Francisco, CA; Dennis Patrick Riordan, Donald Meredith Horgan, Riordan & Horgan, San Francisco, CA; Jessica Rae Madrigal, Nossaman Guthner Knox Elliott, San Francisco, CA; K.C. Maxwell, Esq., Law Office of K.C. Maxwell, San Francisco, CA;Kirk Christopher Jenkins, Sedgwick Detert Moran Arnold, Chicago, IL; Paul L.

Knight, Nossman LLP, San Francisco, CA.

For USA, Plaintiff: Christopher Ries, USDOJ, Antitrust, San Francisco, CA; E. Kate Patchen, Heather S. Tewksbury, Lidia Maher, Micah Lanielle Wyatt, Peter K. Huston, United States Department of Justice, Antitrust Division, San Francisco, CA; Michael L. Scott, Department of Justice, Antitrust Division, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

**ORDER DENYING UNITED STATES' MOTION FOR ORDER REGARDING FACT FINDING FOR SENTENCING UNDER *18 U.S.C. § 3571(d)***

On [*3] July 15, 2011, the Court heard argument on the United States' motion for order regarding fact finding at sentencing. Having considered the arguments of the parties and the papers submitted, and for good cause appearing, the Court hereby DENIES the government's motion. [1]

> 1   The Court also DENIES AU Optronics' motion for leave to file a surreply.

**BACKGROUND**

In June 2010, the Antitrust Division of the Department of Justice indicted AU Optronics Corporation ("AUO"), its wholly-owned subsidiary, AU Optronics Corporation America ("AUO America"), and nine individuals on charges of price-fixing in violation of the Sherman Act, *15 U.S.C. § 1*. AUO is a major manufacturer of thin-film transistor liquid crystal display ("TFT-LCD") panels, electronic components that are used in computer monitors, televisions, and other consumer electronics. Superseding Indictment, ¶¶ 3-4. The Superseding Indictment charges that AUO, in concert with other TFT-LCD manufacturers, conspired to fix worldwide prices of TFT-LCD panels. The conspiracy allegedly resulted in "gross gains [to defendants] of at least $500,000,000, and . . . gross losses [to others] of at least $500,000,000." *Id.*, ¶23.

Based on its allegation that [*4] the conspiracy caused such significant gains and losses, the Superceding Indictment indicates that the government will seek a criminal fine against the corporate defendants [2] under the alternative fine statute, *18 U.S.C. § 3571(d)*. *Id.* While the Sherman Act authorizes fines of up to $100 million for corporate defendants, the alternative fine statute allows the government to seek fines in excess of this statutory limit. *See 15 U.S.C. § 1*; *18 U.S.C. § 3571(d)*. It authorizes fines of up to twice the gain or loss caused by a defendant's conduct:

> If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.

*18 U.S.C. § 3571(d)*. Thus, based solely upon the Superceding Indictment's allegations, the government could seek a fine in this case of up to $1 billion against AUO.

> 2   The Sherman Act authorizes fines of up to $1 million for individual defendants. *15 U.S.C. § 1*. The government has indicated that it will not [*5] seek fines in excess of this amount against the individual defendants in this case. Reply Brief of United States at 8.

In light of the fact that the maximum fine in this case will depend upon proof of the gain or loss caused by the conspiracy, the government seeks two related orders from the Court. First, claiming that evidence of the effects of the alleged antitrust conspiracy is irrelevant to the defendants' guilt, the government requests that the Court bifurcate the trial into a guilt phase and a penalty phase. Second, claiming that criminal fines are exempt from the Supreme Court's decision in *Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)*, the government seeks an order that the evidence presented in the penalty phase need not be presented to a jury.

**DISCUSSION**

**I. Applicability of *Apprendi* to Corporate Fines**

In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id. at 490*. The "penalty" the Supreme Court referred to in this passage was incarceration. The government's motion raises the relatively novel question whether a criminal fine also amounts [*6] to a "penalty" within the meaning of *Apprendi*.

Until recently, there would have been little reason to doubt *Apprendi*'s applicability to fines. Two circuits had applied *Apprendi*'s holding to criminal fines. *See United States v. LaGrou Distribution Sys., Inc., 466 F.3d 585 (7th Cir. 2006)* (finding that trial judge erred by imposing $1 million fine when the maximum fine authorized by the statute was $500,000); *United States v. Pfaff, 619 F.3d 172, 175 (2d Cir. 2010)* (finding that district court erred when it imposed $6 million fine under *section 3571(d)* where jury did not make findings of gain or loss). Even members of the Antitrust Division conceded that fines imposed under the alternative fine statute had to be proven to a jury beyond a reasonable doubt. *See, e.g.*, Declaration of Scott D. Hammond in Support of the United States' Motion for Order Regarding Fact Finding For Sentencing.

In 2009, however, the Supreme Court decided *Oregon v. Ice, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009)*. *Ice* concerned whether a court could sentence a defendant to consecutive prison terms without having a jury find the facts that made consecutive sentences appropriate. *Id. at 714* ("[D]oes the *Sixth Amendment* mandate jury determination [*7] of any fact declared necessary to the imposition of consecutive, in lieu of concurrent, sentences?"). Based largely on its view that, historically, the decision whether to impose concurrent or consecutive sentences had been at the discretion of the trial judge, the Supreme Court held that a judge could impose consecutive sentences without any jury findings beyond those of guilt. *Id. at 717-18*.

Near the end of its opinion, in a section both parties agree is *dicta*, the Court indicated its view that *Apprendi* should be limited to what had originally been core jury functions. In doing so, the Court used criminal fines as an example of an area in which the jury had not traditionally been involved:

> Trial judges often find facts about the nature of the offense or the character of the defendant in determining, for example, the length of supervised release following service of a prison sentence; required attendance at drug rehabilitation programs or terms of community service; and *the imposition of statutorily prescribed fines and orders of restitution*. Intruding *Apprendi*'s rule into these decisions on sentencing choices or accoutrements surely would cut the rule loose from its moorings.

*Id. at 719* [*8] (emphasis added; citation omitted).

Relying on the italicized language, last year the First Circuit held that criminal fines were exempt from *Apprendi*'s rule. In *United States v. Southern Union Co., 630 F.3d 17 (1st Cir. 2010)*, the defendant was convicted of illegally storing hazardous waste, an offense that included a fine of "not more than $50,000 for each day of violation." *Id. at 32*. The jury had made no finding regarding the number of days the violation had continued; thus, the defendant argued that the maximum fine the court could impose was $50,000. *Id.* The First Circuit disagreed and affirmed the $18 million fine the district court had imposed. *Id.* Acknowledging that the issue was "close," *id. at 22*, the court concluded that historical practice allowed a judge to impose a criminal fine based on facts that were not proved to a jury beyond a reasonable doubt. *Id. at 33-36*.

According to the First Circuit's decision, "[b]efore incarceration became widely used, 'the two main forms of noncapital punishment were whippings and fines, and in both cases, the judge could set the amount or even elect between the two, depending on the nature of the defendant and the crime.'" *Id. at 35 n.15* [*9] (quoting Erik Lillquist, *The Puzzling Return of Jury Sentencing: Misgivings about Apprendi*, 82 N.C.L. Rev. 621, 641 (2004)). The court contrasted this with the historical lack of judicial discretion over incarceration:

> Applying *Ice*'s reasoning and logic to the issue in this case, it is now highly relevant that, historically, judges assessed fines without input from the jury. Judges had discretion to determine the amount of any fine imposed, and "[t]he range was apparently without limit except insofar as

it was within the expectation on the part of the court that it would be paid." Kathryn Preyer, *Penal Measures in the American Colonies: An Overview*, 26 Am. J. Legal Hist. 326, 350 (1982). This is in direct contrast with the Supreme Court's reasoning in the *Apprendi* context that the "English trial judge of the later eighteenth century had very little explicit discretion in sentencing." *Apprendi, 530 U.S. at 479, 120 S. Ct. 2348* (quoting John H. Langbein, *The English Criminal Trial Jury on the Eve of the French Revolution*, in The Trial Jury in England, France, Germany 1700--1900, at 13, 36--37 (A. Schiappa ed., 1987)). Judicial discretion was limited in this context because the jury decided [*10] what level of crime the defendant had committed, which in turn largely determined the sentence. *Id. at 479-80, 120 S. Ct. 2348*.

*Id. at 35*.

The government argues that this Court should follow the First Circuit. Relying largely on the same reasoning as the First Circuit, it contends that under historical practices fines fell within the sole discretion of the trial judge. *See* Kathryn Preyer, *Penal Measures in the American Colonies: An Overview*, 26 Am. J. Legal. Hist. 350 (1984) ("Also within the discretion of the judge, as with whipping, the precise amount of the fine was established by him and tailored individually to the particular case."); Edwin Powers, *Crime and Punishment in Early Massachusetts 1620-1692: A Documentary History* 204 (Boston, Beacon Press, 1966) ("Magistrates were usually content with the payment of a fine of a few shillings or pounds unless the crime was particularly serious or shocking."); Francis Hilliard, *The Elements of the Law; Being a Comprehensive Summary of American Jurisprudence* 424 (New York, 1848) (in mid-nineteenth century America, "the length of imprisonment and amount of the fine [were] usually regulated, in the judge's discretion, by the aggravating or [*11] mitigating circumstances of the case"). The government argues that this historical practice renders *Apprendi* inapplicable to the fines in this case.

The Court is unconvinced. As an initial matter, the Supreme Court's statement in *Ice* is *dicta*, made without the benefit of briefing or argument in a case whose facts do not remotely resemble the facts of this case. While, of course, Supreme Court *dicta* is compelling, losing sight of *Apprendi's* mandate based upon one clause in *Ice* risks losing the forest for the trees.

More importantly, however, the sentencing decision in *Ice* -- whether to impose concurrent or consecutive sentences -- seems of a different character than the sentencing decision here. To begin with, the fine scheme -- a statutory maximum that can only be exceeded based upon certain factual findings -- much more closely resembles the sentencing scheme in *Apprendi* than the binary decision between concurrent and consecutive sentences at issue in *Ice*. Indeed, the Second Circuit found this parallel structure compelling in *Pfaff*:

> Although *§ 3571(d)* is . . . fashioned as an "alternative fine" . . . the fact remains that, absent a pecuniary gain or loss finding, a district court may not [*12] impose a fine greater than that provided for in *subsections (b)*, *(c)*, or *(e)*, whichever is applicable. Therefore, it is the clear implication of *Apprendi* and *Blakely* that when a jury does not make a pecuniary gain or loss finding, *§ 3571*'s default statutory maximums cap the amount a district court may fine the defendant.

*Pfaff, 619 F.3d at 175*.

The Supreme Court's own language acknowledges the difference in kind between the "alternate" fine here and the "statutorily prescribed fines" it referred to in *Ice*. When likening the imposition of consecutive sentences to the "imposition of statutorily prescribed fines," the Court referred to both as sentencing "accoutrements," indicating that it considered a criminal fine to be an ancillary form of punishment. While in many cases a criminal fine may be an "accoutrement," that word is a poor fit when used to describe the fine in this case.

The fine in this case is the primary form of punishment the government seeks and could amount to as much as $1 billion, ten times more than the fine authorized by the Sherman Act. The magnitude and primacy of such punishment puts it in a separate class from an ordinary criminal fine imposed against a

defendant [*13] who faces incarceration. In the Court's view, this is reason enough to apply *Apprendi's* mandate and require a jury to find the amount of gain or loss under the alternative fines statute.

The historical practices the government has cited simply do not seem well suited for the situation before the Court, where incarceration -- or whippings, for that matter -- is not a penalty the Court can impose. The Sherman Act authorizes a maximum fine of $100 million. Should the government wish to go beyond that act's authorization and seek a significantly larger fine based upon the establishment of additional facts, it must do so by following *Apprendi's* mandate, and by proving those facts to a jury beyond a reasonable doubt.

**II. Bifurcation**

Regardless of the Court's view on the applicability of *Apprendi*, the government requests that the Court bifurcate the trial into a guilt phase and a penalty phase. It claims that evidence related only to gain or loss caused by the conspiracy -- evidence it refers to as "effects evidence" -- is irrelevant to guilt, and should be presented in a separate stage from the guilt-phase evidence. The government's brief lacks a detailed description of the amount or kind of evidence [*14] it believes would be relevant only to punishment. Its reply brief, however, describes the evidence broadly as "expert witness testimony from a forensic economist and economic modeling which incorporates multiple regression analyses to determine the overcharge and evidence regarding the volume of affected commerce to which it applies to determine the gain or loss resulting from the conspiracy." Reply Brief of United States at 4. The government claims that the introduction of this evidence "is unnecessary, risks jury confusion and undue prejudice, and wastes judicial resources." United States' Motion at 2.

A district court has "wide discretion" when ruling on a motion to bifurcate. *See United States v. Matus-Leva, 311 F.3d 1214, 1217 (9th Cir. 2002)*. In this case, the Court does not believe that bifurcation is appropriate.

To begin with, it is difficult to gauge exactly how much bifurcation will promote judicial economy because the government has not provided a specific description of the evidence it believes bifurcation would affect. In the Court's view, while some expert testimony on the effects of the conspiracy will be relevant only to the determination of the maximum fine, similar [*15] evidence will undoubtedly be introduced in order to prove defendants' guilt or innocence. Indeed, the government admits as much when it acknowledges that "evidence that defendants and their coconspirators abided by the price-fixing agreement and raised or charged prices accordingly remains relevant to prove there was . . . an agreement and the defendants joined it." United States' Motion at 3 n.1. Given these commonalities, the Court is disinclined to bifurcate without a more substantial showing that a separate penalty phase will save judicial resources.

The Court also disagrees with the government's view that the introduction of effects evidence will confuse the jury and prejudice the government's case. Juries are routinely called upon to make the sort of contingent determination they will have to make in this case. While the evidence of the ultimate effect of the alleged conspiracy may be complex, this Court does not find that complexity alone to be a sufficient reason to bifurcate the trial.

Given the Court's ruling that the government must prove the amount of gain or loss to a jury beyond a reasonable doubt in order to proceed under the alternative fine statute, there will be little [*16] benefit to bifurcating the trial into guilt and penalty phases. Accordingly, the government's request for a bifurcated trial is DENIED.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES the government's motion for order regarding fact finding for sentencing. (Docket Nos. 333, 354)

**IT IS SO ORDERED.**

Dated: July 18, 2011

/s/ Susan Illston

SUSAN ILLSTON

United States District Judge